UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAKIYAH LUMONT KIYOI,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No.  5:26-cv-05429-EJD<br><br>**ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND**<br><br>Re: ECF. Nos. 1, 2, 5 |

Before the Court is Plaintiff Makiyah Lumont Kiyoi's ("Plaintiff") motion for leave to proceed *in forma pauperis* ("IFP").  ECF No. 2.  For the reasons set forth below, Plaintiff's IFP application is GRANTED and the complaint is DISMISSED IN PART WITH LEAVE TO AMEND.

## I.    BACKGROUND

This civil rights action arises out of a May 23, 2025, incident between Plaintiff and two individual Defendants, Tina Tran and Wayne Baird.  According to the allegations in the complaint, on May 23, 2025, Defendants Tran and Baird kicked in Plaintiff's bedroom door while Plaintiff was partially unclothed.  Compl. ¶ A, ECF No. 5.  After this incident, Plaintiff was arrested and transported to the San Jose Police Department ("SJPD").  *Id.*   During transport, Plaintiff repeatedly informed the officers of a known and documented shoulder dislocation, requesting that he be handcuffed in the front, rather than with his arms behind his back.  *Id.*  Officer Thompson (#4952) refused to accommodate Plaintiff's request, stating that the officers were not required to cuff him in front.  *Id.*  During transit from the SJPD jail to the Santa Clara

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

1

County jail, Plaintiff was placed in a chain gang for approximately 30 to 45 minutes. *Id.* Plaintiff experienced extreme pain for the duration of his near 24-hour detention in Santa Clara County jail and was not provided with medication despite repeated requests. *Id.* While in detention, Plaintiff was also denied appropriate meals in accordance with his religious beliefs. *Id.*

After the May 23, 2025, incident, Plaintiff states that he made multiple attempts to file a police report that identified Defendant Baird as the individual who kicked in his door but experienced obstruction by SJPD Officers at various junctures. *Id.* at ¶ B. During a January 28, 2026, visit to file the report, Plaintiff alleges that Officer Panighetti (#3974) "burst" into the lobby and ordered Plaintiff to sit down. *Id.* at ¶ C. When Plaintiff sought clarification about the request, Officer Panighetti grabbed him, forcefully pushed him against a bench, and said that he was placing him on a Section 5150 hold. *Id.* Plaintiff was subsequently transported to a hospital, and then to jail. *Id.* During the processing, Officers Montez (#5034) and Reed (#4945)—officers against whom Plaintiff had previously filed complaints—were present. *Id.* Deputy Milton of the San Jose Sheriff's Office made "retaliatory and derogatory comments, including referring to [Plaintiff] as a 'sissy snitch.'" *Id.*

Plaintiff also alleges that the Officers repeatedly misspelled Plaintiff's name, causing ongoing harm, including difficulty locating court cases and interfering with his public defender's ability to access his cases. *Id.*

Plaintiff brings eight claims: (1) a 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights due to illegal detention and use of excessive force; (2) a § 1983 claim for violation of his First Amendment rights due to retaliation; (3) a § 1983 claim alleging that the City of San Jose failed to adequately train and supervise officers, resulting in adverse treatment to Plaintiff when he exercised his First Amendment rights and, separately, excessive use of force and a failure to accommodate religious dietary restrictions for individuals in custody; and finally, maintaining a custom and practice of tolerating officer misconduct; (4) violation of the Bane Act (Cal. Civ. Code § 52.1); (5) a § 1983 claim for violation of the Fourteenth Amendment's substantive due process clause; (6) a § 1983 claim alleging conspiracy to deprive Plaintiff of his

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART
2

constitutional rights; (7) intentional infliction of emotional distress; and (8) trespass. Plaintiff names nine defendants: (i) the City of San Jose; (ii) Officer Thompson (#4952); (iii) Officer Panighetti (#3974); (iv) Sergeant Krauss; (v) Deputy Milton; (vi) Officer Montez (#5034); (vii) Officer Reed (#4945); (viii) Wayne Baird; and (ix) Tina Tran.[1] Plaintiff also names Does one through twenty who are "other officers, deputies, or employees of the City of San Jose or Santa Clara whose true identities are currently unknown to Plaintiff." *Id.* at 2. Plaintiff seeks compensatory damages, punitive damages, declaratory and injunctive relief, attorneys' fees and costs, and pre- and post-judgment interest. *Id.* at Prayer for Relief.

## II.    LEGAL STANDARD

IFP applications are governed by 28 U.S.C. § 1915, which provides in relevant part that "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees . . . by a person who submits an affidavit . . . that the person is unable to pay such fees." 28 U.S.C. § 1915(a).

The Court must review any complaint filed pursuant to the IFP provisions of § 1915(a) and determine whether the complaint is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). If the complaint survives the initial screening, the court must "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). The Court will screen Plaintiff's complaint, and order service, only if the Court determines that the complaint survives initial screening.

A complaint that does not state enough facts to state a claim to relief that is plausible on its face is deficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

[1] Throughout this Order, Officers Thompson, Panighetti, Montez, and Reed, as well as Sergeant Krauss are referred to collectively as the SJPD Defendants. Defendants Wayne Baird and Tina Tan are referred to collectively as the Private Citizen Defendants.

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART
3

1990).

## III.   DISCUSSION

As a threshold matter, the Court is satisfied that IFP status is warranted based on Plaintiff's affidavit describing his lack of financial resources. Accordingly, Plaintiff's application to proceed IFP is GRANTED. The Clerk of Court shall issue the summons. Furthermore, the U.S. Marshal for the Northern District of California shall serve, without prepayment of fees, a copy of the complaint, any amendments or attachments, Plaintiff's affidavit and this order upon Defendants. The Court now turns to screening the complaint.

### A.   Government Claims Act

"The California Government Claims Act [formerly known as the Tort Claims Act] requires a party seeking to recover money damages from a public entity or its employees to present a claim within six months after accrual of the claim to the entity before filing suit in court." *Allums v. Bay Area Rapid Transit*, No. 25-cv-08837-LB, 2025 WL 3724142, at *7 (N.D. Cal. Dec. 23, 2025) (citing Cal. Gov't Code §§ 911.2(a), 945.4). In particular, California Government Code Section 950.2 "provides that 'a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred' unless a timely claim has been filed against the employing public entity." *Fowler v. Howell*, 42 Cal. App. 4th 1746, 1750 (1996).

Here, Plaintiff has not alleged facts that either demonstrate or excuse compliance with the Government Claims Act. Therefore, Plaintiff's Bane Act claim against the City of San Jose, the SJPD Defendants, and Deputy Milton is subject to dismissal.[2]

### B.   Civil Rights Claims

Plaintiff brings five claims pursuant to § 1983 which "imposes liability upon any person, who, acting under the color of law, deprives another of a federally protected right." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988); 42 U.S.C. § 1983. A plaintiff

---

[2] The Court notes that in the Complaint, Plaintiff's Bane Act claim does not reference the Private Citizen Defendants. *See* Compl. 5.

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART
4

alleging a claim under § 1983 must show that (1) the defendants acted under state law and (2) the defendants deprived plaintiff of a right secured by the Constitution. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987). As to the first showing, a police officer acts under color of law when they "purport or pretend to act in performance of [their] . . . official duties." *Mendez v. Cnty. of Los Angeles*, 38 Fed. App'x 480, 480 (9th Cir. 2002) (quoting *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000)).

### 1.    Claim 1 (§ 1983 – Excessive Force)

Plaintiff brings the first cause of action for excessive force pursuant to § 1983. In addressing an excessive force claim brought under § 1983, the Court must first identify the specific constitutional right allegedly infringed by the application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Here, Plaintiff alleges that the application of force infringed his Fourth Amendment right to be free from excessive force and unreasonable seizures. Compl. 4. In particular, Plaintiff alleges that (1) Officer Thompson refused to front cuff Plaintiff despite a known and documented shoulder dislocation and (2) Officer Panighetti grabbed Plaintiff and pushed him against a bench, squeezing his arm with enough force to create bruising and pain in connection with placing him on a Section 5150 hold. *Id.*

To determine whether the force used by officers was excessive, the court must "assess whether it was objectively reasonable 'in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation.'" *Gregory v. Cty. of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008) (quoting *Graham*, 490 U.S. at 397); *see also Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427–28 (2017) (reasonableness is the touchstone of the Fourth Amendment analysis and generally assessed by weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion).

In the Ninth Circuit, excessive force claims are analyzed in three steps as articulated in *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). First, the court assesses "the

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Id.* (quoting *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)).  Second, the court must evaluate the government's interest in the use of force.  *Id.*  Third, the court must "'balance the gravity of the intrusion on the individual against the government's need for that intrusion.'"  *Id.* (quoting *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

### a.   May 23, 2025, Arrest

The Court first considers Officer Thompson's refusal to "front cuff" the Plaintiff despite a purportedly known and documented shoulder injury.  Compl. 4.  It is well established in this Circuit that unduly tight handcuffing can constitute excessive force in violation of the Fourth Amendment.  *See Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).  But whether handcuffing when an individual alerts an officer to a pre-existing injury aggravated by the handcuffing is sufficient to state a claim for excessive force is not so established.  *See Malek v. Green*, No. 17-cv-00263-BLF, 2017 WL 4284117, at *17 (N.D. Cal. Sept. 27, 2017) (noting the absence of case law holding that handcuffing alone, or handcuffing "when the suspect alerts the officer to a pre-existing injury, is sufficient to state a claim for excessive force").  Nonetheless, under the "low threshold for proceeding past the screening stage," *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012), the Court finds that Plaintiff has stated a plausibly nonfrivolous § 1983 claim against Officer Thompson, including because Plaintiff alleges that he made "repeated[]" statements informing the Officers of his injury which were apparently acknowledged, but not acted upon, when Officer Thompson "stat[ed] in substance that officers were not technically required to cuff him in the front."  Compl. 4.  Plaintiff further alleges that as a result of the continued rear-handcuffing he was "forced to lean backward onto his dislocated shoulder for an extended period, causing him significant pain and aggravating his injury."  *Id.*

### b.   January 28, 2026, Incident

The Court next considers Plaintiff's claim arising from Officer Panighetti and another unnamed officer's conduct on January 28, 2026, when Plaintiff visited the police station to file a

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

new police report.  Compl. 3–4.  In particular, Plaintiff alleges that Officer Panighetti "burst" from a back room of the station into the lobby and ordered Plaintiff to sit down before screaming that he was being placed on a California Welfare & Institutions Code Section 5150 hold.  *Id.* at 3.  Officer Panighetti then is alleged to have grabbed Plaintiff and pushed him to the bench while he squeezed Plaintiff's arm; another unnamed officer held Plaintiff's other arm.  *Id.*

"Section 5150 provides that '[w]hen any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer [or other designated persons] may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72–hour treatment and evaluation.'"  *Harvey v. Alameda Cnty. Med. Ctr.*, 280 F. Supp. 2d 960, 969 (N.D. Cal. 2003), *aff'd,* 123 F. App'x 823 (9th Cir. 2005) (quoting Cal. Welf. & Inst. Code § 5150).  The Fourth Amendment's probable cause standard applies to determine the lawfulness of a detention under Section 5150.  *See Maag v. Wessler,* 960 F.2d 773, 775 (9th Cir.1991) (holding seizure of suspected mentally ill person for psychiatric evaluation is "analogous to a criminal arrest and must therefore be supported by probable cause").

Here, Plaintiff alleges that Officer Panighetti pushed him down onto a bench and squeezed his arm so tightly that Plaintiff had a bruise following the incident and subsequently had Plaintiff seized and transported to a mental health facility.  *See* Compl. 4–5.  Plaintiff alleges that Officer Panighetti's actions were disproportionate to Plaintiff's behavior; Plaintiff merely sought clarification in response to Officer Panighetti's demand that he sit down.  *Id.* ¶ C.  Plaintiff further asserts that he "was not resisting."  *Id.* at 4.  Based on the facts alleged and under the "low threshold for proceeding past the screening stage," *Wilhelm*, 680 F.3d at 1123, the Court finds that Plaintiff has stated a plausibly nonfrivolous § 1983 claim against Officer Panighetti, and this claim may proceed.

### 2.    Claim 2 (§ 1983 – Retaliation)

Plaintiff brings the second cause of action for retaliation pursuant to § 1983, alleging that the SJPD Defendants and Deputy Milton retaliated against Plaintiff in response to his (1) filing a

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

civil lawsuit against his landlord; (2) attempting to file police reports; and (3) submitting complaints against San Jose Police Department officers, all of which constitute exercises of his First Amendment rights.

The First Amendment prohibits government officials from subjecting individuals to retaliatory actions for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) [he] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—*i.e.*, that there was a nexus between the defendant's actions and an intent to chill speech." *Gonzalez v. Santa Clara Cnty.*, 793 F. Supp. 3d 1093, 1106 (N.D. Cal. 2025) (quoting *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016)). A plaintiff must show that the defendant's retaliatory animus was a but-for cause of the defendant's conduct, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019)).

Here, the Court finds that the Plaintiff engaged in constitutionally protected activity by filing a lawsuit, attempting to file police reports, and submitting complaints regarding SJPD officers. Filing grievances or commencing a lawsuit is considered protected conduct under the First Amendment. *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017). But Plaintiff has not alleged sufficient facts from which to conclude that the protected activity was a substantial motivating factor in the officers' conduct. For example, it is unclear why the officers would be motivated to "fabricate[ a] 5150 detention" in response to Plaintiff's civil complaint against his landlord, Defendant Tran, or how Deputy Milton (affiliated with the Santa Clara County Sheriff's Office) was involved in the events on January 28, 2026. The Plaintiff even seems to concede that his protected activity may *not* be a substantial motivating factor for the officers' conduct. *See* Compl. 4 ("The retaliatory actions of Defendants were motivated, at least in part, by Plaintiff's exercise of his First Amendment rights."). The Court does not address whether the officers' and

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

United States District Court
Northern District of California

Deputy Milton's conduct actions would chill a person of ordinary firmness from continuing to engage in the protected activity because Plaintiff has not alleged the requisite causal connection. Plaintiff's § 1983 claim against the SFPD Defendants and Deputy Milton is subject to dismissal.

### 3.    Claim 3 (§ 1983 – Municipal Liability)

Plaintiff brings the third cause of action for municipal liability pursuant to § 1983. Compl. 4–5. Plaintiff alleges that the City of San Jose's policies, customs, and practices and failure to adequately train, supervise, and discipline its officers caused the constitutional harms that Plaintiff alleges throughout his complaint.

42 U.S.C. § 1983 provides a cause of action against any "person" who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution of the United States. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691–92 (1978). Municipalities are "persons" under § 1983 and can be found liable for violating individuals' Constitutional rights. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690). The municipality, however, may only be held liable for its *own* illegal acts; "[i]t cannot be held vicariously liable for its employees' actions." *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1026–27 (N.D. Cal. 2022). But "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official capacity.'" *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694).

A plaintiff may establish municipal liability pursuant to § 1983 in three different ways. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). First, "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom'" constituting the local municipality's standard operating procedure. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, the plaintiff may prove that the constitutional tort was committed by an official with final policy-making authority "and that the challenged action itself thus constituted an act of official

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

United States District Court
Northern District of California

governmental policy." *Id.* "Third, the plaintiff may prove that an official with policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346–47. State law determines whether an official has final policy-making authority. *Id.* at 1346.

Under the first method of establishing municipal liability, a municipal entity's policy "may be one of action or inaction," where a policy of inaction "is based on a government body's failure to implement procedural safeguards to prevent constitutional violations." *Muhmoud v. City of San Jose*, No. 20-cv-08808-EJD, 2024 WL 2883509, at *6 (N.D. Cal. June 6, 2024) (quoting *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014)). A municipal entity may therefore be liable for a policy or custom of inadequate training, supervision, or discipline of its employees. *Id.* "Liability attaches to a claim that arises under failure to supervise or train only where the failure to train or supervise 'amounts to a "deliberate" or "conscious" choice' by a government entity." *Id.* at *7 (citing *Flores v. Cnty. of Los Angeles*, 758 F.3d 1158 (9th Cir. 2014)).

Plaintiff's third cause of action states, without factual support or reference to specific policies or procedures, that the City of San Jose "maintained policies, customs, and practices that included . . . failing to adequately train officers regarding citizens' First Amendment rights to petition the government and report crimes . . . . failing to adequately train and supervise officers in the proper use of force on individuals with known or visible injuries . . . .[and] failing to adequately train and supervise officers regarding the accommodation of religious dietary requirements for individuals in custody." Compl. 5. Plaintiff further alleges that the City maintained a custom and practice of tolerating officer misconduct and retaliation against individuals who file complaints. Plaintiffs' third cause of action is subject to dismissal for failing to adduce supporting factual allegations.

**4.    Claim 5 (§ 1983 – Substantive Due Process)**

Plaintiff brings a fifth cause of action alleging that the "fabricated" Section 5150 hold deprived him of his liberty interest without due process, violating the Fourteenth Amendment's Substantive Due Process clause. Compl. 5.

"To state a substantive due process claim, a plaintiff must allege (1) a valid liberty or

property interest, (2) which the government infringed in an arbitrary or irrational manner." *Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1265 (D. Idaho 2022) (citing *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)).  If a constitutional claim is covered by a specific constitutional provision, like the Fourth Amendment, the claim should be analyzed under the specific provision's standard, not under the substantive due process analysis.  *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  Here, because the factual allegations that underly Plaintiff's substantive due process claim are the same as Plaintiff's Fourth and/or First Amendment § 1983 claims, the allegations are best analyzed under the Fourth and First Amendment standards, as discussed *infra*. *See Masher v. Cnty. of Los Angeles*, No. 2:25-cv-04091-VBF-KES, 2026 WL 856668, at *12 (C.D. Cal. Mar. 25, 2026) ("Plaintiff does not specify which factual allegations underlie his substantive due process claim.  If it is the '§ 5150 hold without lawful basis,' that falls squarely within the protections of the Fourth Amendment."); *see also Maag*, 960 F.2d at 775 ("Although confinement of the mentally ill by state action generally is analyzed under the due process clause of the fourteenth amendment . . ." seizure of a mentally ill person is analogous to a criminal arrest and is analyzed under the Fourth Amendment.).  Accordingly, this claim is subject to dismissal.

### 5.    Claim 6 (§ 1983 – Conspiracy to Violate Civil Rights)

To establish a conspiracy claim under § 1983, Plaintiff must show "(1) the existence of an express or implied agreement among the defendant[s] to deprive [him] of [his] constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).  "The plaintiff must state specific facts to support the existence of a claimed conspiracy." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004).  Additionally, because Plaintiff brings this § 1983 claim against private defendants Tran and Baird, he must also allege that the private citizen defendants were acting under color of state law.  While "private parties are not generally acting under color of state law," *Price v. State of Haw.*, 939 F.2d 702, 707–08 (9th Cir. 2011), "a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" *Kirtley v. Rainey*,

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART
11

United States District Court
Northern District of California

326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).

Plaintiff alleges that shortly after he mentioned his lawsuit against her to Defendant Tran, she and her associate Defendant Baird "initiated and carried out a campaign of harassment against Plaintiff." Compl. 6. The "campaign" included service of a 60-day notice and attempts to obtain a restraining order. *Id.* Plaintiff alleges that this "private harassment" was followed by police obstruction, excessive force, and fabricated detention which were "taken in coordination with and with the acquiescence of the police defendants." *Id.* Plaintiff argues that this coordination makes the Private Citizen Defendants state actors for purposes of this § 1983 claim. *Id.*

Plaintiff has not alleged facts sufficient to show the existence of either an express or implied agreement among defendants to deprive him of his constitutional rights or that the Private Citizen Defendants were "willful participants in joint action with" the San Jose Police Department. Therefore, this claim is subject to dismissal.

### C.     Tort Claims

#### 1.     Claim 7 (Intentional Infliction of Emotional Distress)

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege facts to sufficient to show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quoting *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007)).

Plaintiff brings this claim against the Private Citizen Defendants. Compl. at 6. Among other things, Plaintiff alleges that Tran and Baird "engaged in extreme and outrageous conduct" by kicking in Plaintiff's door while he was present and partially unclothed, screaming threats against him, and "engaging in a sustained campaign of harassment and intimidation after Plaintiff filed" a lawsuit against Defendant Tran. *Id.* Plaintiff alleges that the Private Citizen Defendants' conduct was intended to cause Plaintiff severe emotional distress or was done with reckless disregard of the probability that it would cause such distress. *Id.* Plaintiff also asserts that he suffered severe

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

United States District Court
Northern District of California

emotional distress, anxiety, humiliation, and other damages.  *Id.*  Plaintiff does not allege any specific facts beyond a very brief description of the door kicking incident on May 23, 2025, rather he recites the elements of an IIED claim.  This claim is dismissed because Plaintiff does not allege sufficient facts to state a claim.

### 2.   Claim 8 (Trespass)

Finally, Plaintiff brings a trespass claim against Defendant Baird for kicking in Plaintiff's bedroom door, "causing damage and interfering with Plaintiff's possessory interest in his home."  *Id.* at 6.  To allege a trespass claim, a plaintiff must establish (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm."  *Lanfri v. Goodwill of Silicon Valley*, 762 F. Supp. 3d 849, 859 (N.D. Cal. 2024) (citing *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 262 (2017)).

Plaintiff alleges that Defendant Baird caused damage to Plaintiff's bedroom door when he kicked the door in.  Compl. 6.  Plaintiff asserts that the bedroom was his and that his landlord was Defendant Tran, but does not otherwise allege specific facts to support that he had a possessory interest in the bedroom at the time that Baird kicked the door in.  Further, Plaintiff alleges that Baird "caus[ed] damage," but does not elaborate on what this harm or damage is.  Accordingly, Plaintiff's trespass claim is subject to dismissal.

## IV.   CONCLUSION

For the foregoing reasons, it is ordered that:

1.   Plaintiff's application to proceed IFP is GRANTED.  The Clerk of Court shall issue the summons.  Furthermore, the U.S. Marshal for the Northern District of California shall serve, without prepayment of fees, a copy of the complaint, any amendments or attachments, Plaintiff's affidavit and this order upon Defendants.

2.   Plaintiff's § 1983 Fourth Amendment Excessive Force claim against Officers Thompson and Panighetti may proceed.

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART

3.  Plaintiff's § 1983 First Amendment retaliation claim against the San Jose Police Department Officers is DISMISSED WITH LEAVE TO AMEND.

4.  Plaintiff's § 1983 *Monell* claim against the City of San Jose is DISMISSED WITH LEAVE TO AMEND.

5.  Plaintiff's § 1983 substantive due process claim is DISMISSED WITH LEAVE TO AMEND.

6.  Plaintiff's § 1983 conspiracy claim is DISMISSED WITH LEAVE TO AMEND.

7.  Plaintiff's Bane Act, Intentional Infliction of Emotional Distress, and Trespass claims are DISMISSED WITH LEAVE TO AMEND.

8.  Plaintiff shall FILE a first amended complaint within 30 days of the date of this Order.

9.  No new claims or parties may be added without express leave of the Court. Amendment shall be limited to remedying the deficiencies identified in this Order. While this case is pending, Plaintiff must promptly inform the Court of any change of address. Failure to do so may result in dismissal of this action.

**IT IS SO ORDERED.**

Dated: July 1, 2026

EDWARD J. DAVILA
United States District Judge

Case No. 5:26-cv-05429-EJD
ORDER GRANTING IFP APPL., DISMISSING COMPLAINT IN PART
14

United States District Court
Northern District of California